**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM TIERNO,** | **:** | |
| **Plaintiff** | **:** | **CIVIL ACTION NO. 3:20-0211** |
| **v.** | **:** | **(JUDGE MANNION)** |
| **TINA SHAUP, *et al*.,** | **:** | |
| **Defendants** | **:** | |

**MEMORANDUM**

**I. BACKGROUND**

Plaintiff, William Tierno, an inmate formerly confined at the Retreat State Correctional Institution, Hunlock Creek ("SCI-Retreat"), Pennsylvania[1], filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The named Defendants are Tina Shaup, SCI-Retreat Unit Manager and Correctional Officer McTague. Id. Plaintiff seeks damages for alleged violation of his First and Eighth Amendment rights for Defendants' alleged failure "to protect Plaintiff from harm and by retaliating against Plaintiff for filing grievance by attempting to place a 6'2" pedophile in cell with Plaintiff and issuing a misconduct for filing the grievance against co-workers and for

---

[1] Plaintiff is currently housed at the Fayette State Correctional Institution, LaBelle, Pennsylvania.

not following RTU Policy." <u>Id</u>. Specifically, Plaintiff alleges that on September 19, 2019, he advised Correctional Officers Kosicki, Sierra-Miller and Sgt Jones that Plaintiff "no longer wanted Inmate Zenecki as a cellie because he wasn't getting along with him, as Zenecki was "exhibiting mental health and behavioral problems." <u>Id</u>. Plaintiff claims that he "also explained to staff that RTU Policy, DC-ADM 13.8.1., Sec. 5, states that the B.A.C. cell is to be used when an inmate is disruptive and showing signs of mental health and behavioral problems and that inmate should not be placed in a cell with Plaintiff under such situations." <u>Id</u>. Plaintiff states that his "request was denied." <u>Id</u>.

On September 20, 2019, Inmate Zenecki was moved from Plaintiff's cell and subsequently placed in the Restrictive Housing Unit (RHU) for "disruptive behavior, etc. towards staff." <u>Id</u>.

On September 22, 2019, Plaintiff filed Grievance #824760 against Corrections Officer Kosicki, Sierra-Miller and Jones "for not following RTU Policy." <u>Id</u>. He claims that "this grievance resulted in the C.O.'s being moved off the block for approximately one week." <u>Id</u>.

Plaintiff alleges that on September 24, 2019, Correctional Officer McTague "advised Plaintiff he was getting another cellie." <u>Id</u>. Plaintiff states that "when [he] saw it was Inmate Andre, who is a 6'2" predatory pedophile,

that C.O. McTague was placing in the cell, Plaintiff advised C.O. McTague he will take a cellie, but not the 6'2" pedophile and RTU Policy, DC-ADM 13.8.1 Sec. 5 has to be followed and is being violated." Id.

On September 24, 2019, Corrections Officer McTague issued Misconduct Report #D247729 for Plaintiff refusing to obey an order. Plaintiff claims that this report was fabricated "because he did not write the true facts as they occurred, such that Plaintiff states he will take a cellie, but not a 6'2" pedophile" and that "RTU Policy 13.8.1, Sec. 5 has to be followed and is being violated [and] that Unit Manager Shaup assigned a 6'2" pedophile in the cell with Plaintiff is retaliation for filing Grievance #824760 on 9/22/19." Id.[2]

On September 24, 2019, Misconduct Report #D247749 was referred to Unit Manager Tina Shaup for Informal Resolution and Defendant Shaup "refused to hear it and referred it to the Hearing Examiner on 9/25/19 due to Plaintiff refusing cellie to gain Z-Code, but there is no evidence for this action taken." Id.

---

[2] On October 14, 2019 Defendant Shaup denied Plaintiff's Grievance #824760 and on November 1, 2019, Facility Manager Mason denied Plaintiff's Grievance Appeal. Plaintiff claims that he filed a final appeal on November 13, 2019 and "no answer was received." Id. On November 25, 2019 a "follow-up appeal and request for an answer to the 11/13/19 Appeal was placed in the prisoner mailbox" and "again no answer was received." Id.

On October 1, 2019, a misconduct hearing was conducted by T. Walter on Misconduct #D247749, which Plaintiff was given 15 days cell restriction and found guilty of refusing to obey an order. Id.

On October 9, 2019, Plaintiff appealed the decision of Hearing Examiner T. Walter, and on October 24, 2019, Plaintiff claims "the PRC denied the Appeal but failed to address the contents of the Appeal," which Plaintiff claims included the argument that "the misconduct report was issued out of retaliation for Plaintiff filing Grievance #824760." Id.

On October 26, 2019, Plaintiff appealed to Facility Manager Mason, who denied the appeal and again "failed to address the contents of the appeal." Id. On November 13, 2019, Plaintiff placed his Final Appeal in the prisoner mailbox "but never received an answer." Id. On December 25, 2019, Plaintiff filed a follow-up appeal and request for answer "but never received an answer." Id.

Plaintiff states that on January 21, 2020, he "was advised by his counselor at his annual review that he was demoted to a Custody Level 3 from a Custody Level 2 as a result of the 9/24/19 misconduct." Id.

Presently before the Court is the Defendants' motion for summary judgment. (Doc. 27). The motion is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

## II.   SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse

Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.

White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## II. STATEMENT OF UNDISPUTED FACTS[3]

From February 20, 2018 through February 20, 2020, Plaintiff was housed at SCI-Retreat in the "D" building within cell number 2031. (Doc. 28 at 181, Plaintiff's Cell History). Plaintiff shared that cell with an inmate named Zenecki (#KG4257) between the dates of July 26, 2019 and September 23, 2019. (Doc. 28 at 186, Inmate Zenecki's Cell History).

On September 22, 2019, Plaintiff filed Grievance #824760, complaining therein about being cellmates with inmate Zenecki. (Doc. 28 at 27, Official Inmate Grievance). Plaintiff did not present any claims against Defendants Shaup or McTague or for monetary damages. Id. Grievance

---

[3] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party]...as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. 28). Plaintiff did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1 or a statement of material facts to support his own motion for summary judgment. Thus, the Court deems the facts set forth by Defendants to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

#824760 was received by the Facility Grievance Coordinator of SCI Retreat J. Mahally on September 23, 2019. Id.

On September 24, 2019, Defendant McTague advised Plaintiff that he was getting a new cellmate by the name of Andre (#NT4118). (Doc. 28 at 32, Misconduct #D247749). Plaintiff refused to take Inmate Andre as a cell mate and was issued Misconduct #D247749, which states the following:

> On the above date and time, I/M Tierno (MC2031) was ordered to take I/M Andre (NT4118) as a cellie by this reporting officer. I/M Tierno refused to take a cellie, at which point the compound Sgt. was called. Upon Sgt. Williamson's arrival, he had again ordered I/M Tierno to take a cellie, receiving negative results. Nothing further to report.

Id.

On September 25, 2019, a non-party ranking C.O. on duty referred misconduct report #D247749 to the Unit Manager, Defendant Shaup for informal resolution who, citing Plaintiff's refusing of cellies to gain a Z Code, in turn referred the misconduct report #D247749 to a hearing examiner, a non-party. Id. A copy of misconduct report #D247749 was served upon Plaintiff by a different non-party correctional officer at 6:15pm on September 25, 2019. Id.

On September 26, 2019, after receiving the misconduct report, Plaintiff completed an "Inmate Request for Representation and Witnesses" form. (Doc. 28 at 33).

On September 27, 2019, non-party medical staff completed a Mental Health/Intellectual Disability form in relation to misconduct report #D247749. (Doc. 28 at 34).

On October 1, 2019, Plaintiff attended his hearing on misconduct report #D247749 which was presided over by a non-party hearing examiner, T. Walker. (Doc. 28 at 36, Disciplinary Hearing Report). Plaintiff pled guilty to the misconduct. Id.

On October 4, 2019, Defendant Shaup denied Grievance #824760, finding the following:

> Mr. Tierno, you claim that on 9/19/2019 at approximately 1800, you notified staff that you did not want inmate Zenecki in your cell anymore because you were not getting along with him. You further stated staff is forcing you to be in a cell with an inmate who was having behavioral problems which triggered your mental illness and put your "well being and safety" in jeopardy. You also indicate that you were told by another inmate on the wing that CO Kosicki said, "the only way I'm moving him (Zenecki) is if I write both of them up."

> Mr. Tierno, you must understand, you requested to have that inmate as your cellie, and you have been celled together for months. You are compatible according to the DOC policy. You claim that on 9/19/19, your cellie was having "behavioral issues" and you wanted him out of your cell because you were not getting along with him. Because the safety of both of you were not at risk, this is an issue that could wait until the following day, as it was discussed with you by Sgt. Jones. You indicated, your cellie put your "well being and safety" in jeopardy, only meaning, he was on your nerves that night. Mr. Tierno, the fact is you wanted him as a cellie, then you didn't want him anymore; then you wanted him out that night, but you did not get your way. The issue

- 10 -

was resolved the following day, as Sgt. Jones indicated, and your cellie was moved out.

As far as CO Kosicki saying anything about a "write-up," you cannot grieve something you personally did not hear. Also, I encourage you to continue to speak with your PSS, CPS and or psychiatry if you experience any Mental Health issues.

The grievance is denied.

(Doc. 28 at 29, Initial Review Response). On October 9, 2019, Plaintiff appealed both the denial of Grievance #824760 to the facility manager, and the verdict in misconduct #D247749 to the Program Review Committee ("PRC"). (Doc. 28 at 37, Appeal). Plaintiff claimed in his appeal of Grievance #824760 that Shaup's initial review response [incorrectly] assumed Plaintiff's grievance was only filed because Plaintiff did not get his way, that Plaintiff should not have been housed with inmate Zenecki, and that his receipt of Misconduct #D247749 was retaliatory, citing the timing between his receipt of the misconduct and his filing of Grievance #824760. Id. Plaintiff claimed in his appeal of the verdict in misconduct #D247749 that the misconduct was retaliatory, citing the timing between his receipt of the misconduct and his filing of Grievance #824760, that Shaup should have resolved the issues underlying the misconduct via informal means, and that that Shaup's initial review response [incorrectly] assumed Plaintiff's grievance was only filed so that Plaintiff could obtain a Z-Code. Id.

- 11 -

On October 10, 2019, Plaintiff's appeal of misconduct #D247749 was received by the PRC. (Doc. 28 at 1, Misconduct history). On October 15, 2019, Plaintiff's appeal of Grievance #824760 was received by the non-party facility manager. (Doc. 28 at 30).

On October 24, 2019, the PRC reviewed and denied Plaintiff's appeal of misconduct #D247749. (Doc. 28 at 38, Program Review Committee Action). On October 26, 2019, Plaintiff filed an appeal of the PRC's denial of misconduct #2247749 with Superintendent Mahally. (Doc. 28 at 39, Misconduct Hearing Appeal). On October 29, 2019, Plaintiff's appeal of misconduct #D247749 was received by Superintendent Mahally. (Doc. 28 at 130, Misconduct History). On November 1, 2019, the facility manager reviewed and denied Plaintiff's appeal of Grievance #824760, and Plaintiff's appeal of Misconduct # D247749 as follows:

> I am in receipt of your 2nd Level Misconduct Appeal. You chose to appeal based on Sections a., b., & c.
>
> a. Procedures employed were not contrary to law, Department directives, or regulations. You provide no evidence of procedural error.
>
> b. Punishment was not disproportionate to the offense. You pled guilty to a Class I charge, were given 15 Days Cell Restriction, and the Misconduct was dropped to a Class II. This, in no way, is disproportionate to the offense.
>
> c. Findings of fact were sufficient to support the decision. You pled guilty to the charges.

- 12 -

> Based upon the above information, I uphold the sanction
> imposed by the Hearing Examiner and upheld by the P.R.C.

(Doc. 28 at 40, Response to Request for Appeal of Misconduct). Plaintiff

never appealed the facility manager's denial of either grievance #824760 or

Misconduct #D247749 to SOIGA. (Doc. 28 at 129, 130).


## III. DISCUSSION

Plaintiff's constitutional claims are brought under 42 U.S.C. §1983,

which provides in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress....

42 U.S.C. §1983.

"To establish a claim under 42 U.S.C. §1983, [a plaintiff] must

demonstrate a violation of a right secured by the Constitution and the laws

of the United States [and] that the alleged deprivation was committed by a

person acting under color of state law." Moore v. Tartler, 986 F.2d 682, 685

(3d Cir. 1993). "The first step in evaluating a section 1983 claim is to 'identify

the exact contours of the underlying right said to have been violated' and to

determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.' " Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)).

Defendants argue that they are entitled to summary judgment as to Plaintiff's §1983 claims because Plaintiff failed to exhaust administrative remedies and because he cannot produce facts to support the merits of his claims. The Court will address Defendants' arguments below.

## A. Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), prisoner plaintiffs must exhaust all available administrative remedies before they may file suit in federal court. 42 U.S.C. §1997e(a); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 304 (3d Cir. 2020). The statute requires "proper exhaustion," meaning the prisoner must complete the administrative review process in accordance with the procedural rules set by the prison. Downey, 968 F.3d at 305 (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).

The DOC has two administrative remedy systems in place that are relevant to the instant motion: DC-ADM 804, which governs the filing of administrative grievances and associated appeals, and DC-ADM 801, which governs prison disciplinary hearings and associated appeals. Defendants in this case argue that Plaintiff failed to exhaust administrative remedies under

both DC-ADM 804 and DC-ADM 801.74 Defendants' arguments will be analyzed separately.

### 1. <u>Exhaustion Under DC-ADM 804</u>

Under DC-ADM 804, a prisoner must first submit a timely written grievance for review by the Superintendent or regional grievance coordinator within fifteen days from the date of the incident. (Doc. 28 at 41, DC-ADM 804). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." <u>Id</u>. If the inmate wishes to receive compensation or "other legal relief normally available from a court" as a remedy for his grievance, he "must request the specific relief sought in his/her initial grievance." <u>Id</u>. A response should be received within ten business days. <u>Id</u>. Next, the prisoner must submit a timely written appeal to an intermediate review level within ten working days. <u>Id</u>. Again, a response should be received within ten working days. <u>Id</u>. Finally, the inmate must submit a timely appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days, and the inmate should receive a final determination within thirty days. To fully exhaust an issue or incident in

accordance with DC-ADM 804, "[a]n inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process." Id.

The record before the Court reflects that Plaintiff filed one grievance related to the facts of this case under DC-ADM 804.83 In the grievance, which Plaintiff filed on September 19, 2019, Plaintiff asserts that he advised Corrections Officer Kosicki, Ms. C and Sgt. Jones, none of who are named as Defendants in the instant action, that he "did not want inmate Zenecki as a cellie anymore" and that unidentified "staff [was] forcing [him] to continue to be in a cell with an inmate who was experiencing behavioral problems." (Doc. 28 at 27, Official Inmate Grievance). He concludes that "no RTU C/O is supposed to disregard DC-ADM 13.8.1, Mental Health Policy and Procedure and place [him] in a position where [his] mental health and safety is at issue then threaten [him] with a misconduct in order to have [his] cellie moved." Id. Plaintiff does not identify Defendants Shaup or McTague in his grievance or that either one of them exhibited any threatening or retaliatory conduct toward him.

Plaintiff's grievance was denied by an initial review response dated October 4, 2019, authored by Defendant Shaup. (Doc. 28 at 29). Plaintiff appealed the denial to the Superintendent on October 9, 2019. Like his initial

grievance, Plaintiff's appeal does not name Defendants Shaup or McTague, does not state what relief he was requesting, and does not identify any retaliatory or threatening actions. Id. The Superintendent denied the appeal on November 1, 2019. (Doc. 28 at 31). Although Plaintiff claims that he filed an appeal to the SOIGA, Defendants submit documentation revealing that no appeal was ever received or acted on by the SOIGA. (Doc. 28 at 129). Plaintiff does not refute this in his brief in opposition, or submit any documentation indicating otherwise. In fact, Plaintiff does not even mention exhaustion in his brief in opposition. Instead, Plaintiff's entire brief is dedicated to the argument that Defendants' motion for summary judgment should be stricken because it was filed twelve (12) days beyond the December 30, 2020 deadline set in this Court's June 8, 2020 Scheduling Order. (See Doc. 16). The Court finds this argument of no moment as the interests of justice dictate that cases are decided on their merits and the minor delay in filing did not prejudice Plaintiff in any way, as he was still able to oppose the motion. See Prall v. Ellis, No. 10-1228, 2012 WL 4490729, at *3 n.2 (D.N.J. Sept. 27, 2012) (excusing six-day late filing because there was no harm to the interests of justice); Curbison v. United States Gov't of New Jersey, No. 05-5280, 2006 WL 3544560, at *4 (D.N.J. Dec. 7, 2006) (excusing late filing of motion to dismiss because there was no prejudice to

plaintiff, who had "ample time" to oppose motion). Thus, the record evidence demonstrates that Plaintiff failed to file an appeal to final review before the SOIGA. Accordingly, the Court concludes that Plaintiff failed to exhaust available administrative remedies with respect to his grievance filed under DC-ADM 804 due to his failure to fully exhaust his administrative remedies.

Additionally, the Court finds that even had Plaintiff exhausted his administrative remedies, Defendants would still be entitled to summary judgment as Grievance 824760 fails to set forth any claim against Defendants Shaup or C.O. McTague. In fact, it does not even mention the Defendants by name. To that end, DC-ADM 804 requires an inmate submitting a grievance to include a "statement of the facts relevant to the claim" which sets forth, inter alia, the "individuals directly involved in the event(s)." (See Doc. 28 at 41, DC-ADM 804). Thus, for proper exhaustion under the DOC's procedures, Tierno was required to identify Shaup and McTague. Cf. Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004); Pressley v. Huber, No. 3:08-CV-0449, 2018 WL 1079612 (M.D. Pa. Jan. 11, 2018), report and recommendation adopted, 2018 WL 1077300 (M.D. Pa. Feb. 27, 2018) (Mannion, J.). Moreover, Grievance No. 824760 demonstrates that Tierno was fully capable of identifying the corrections officials he believed to be involved in the complained of conduct (i.e., "C/O's Kosicki, Ms. C, and

Sgt. Jones"), the corrections officials with whom he attempted to pursue informal resolution of his complaints (i.e., "Officer Killian"), and the corrections officials to whom he directed his formal grievance (i.e., "Ms. J. Mahally"). Tierno does not, however, identify either of the Defendants (i.e., Unit Manager Shaup or C.O. McTague) in Grievance No. 824760. Thus, Defendants are entitled to summary judgment for Plaintiff's lack of proper exhaustion.

### 2. <u>Exhaustion Under DC-ADM 801</u>

Under DC-ADM 801, an inmate who has been found guilty of a misconduct charge may appeal to the Program Review Committee ("PRC") for an initial review of the guilty finding within fifteen days of the hearing. (Doc. 28 at 135, DC-ADM 801). The inmate's appeal must include a brief statement of the facts relevant to the appeal and the issues complained of on appeal. <u>Id</u>. If the inmate is unsuccessful at the PRC level, he must appeal the PRC decision to the Superintendent/designee within seven calendar days. <u>Id</u>. The Superintendent is required to review the appeal and forward a decision to the inmate within seven working days of the appeal being filed. <u>Id</u>. If the inmate is unsuccessful before the Superintendent, he must appeal to the DOC's Chief Hearing Examiner's Officer within seven days. <u>Id</u>. An

inmate must appeal the disciplinary decision through all three stages of appeal to properly exhaust his administrative remedies. Id.

Here, once again, although Plaintiff alleges in his complaint that he filed a grievance to final appeal to the Chief Hearing Examiner, the record evidence demonstrates that no appeal was received or acted upon by the Chief Hearing Examiner. (See Doc. 28 at 130, Misconduct History). Thus, Defendants argue that Plaintiff failed to exhaust his administrative remedies under DC-ADM 801 with respect to his misconduct charge because he failed to properly file a final appeal to the Chief Hearing Examiner. Plaintiff does not refute this argument with any record evidence or argue that the administrative remedy system was made unavailable at any point. Again, his brief in opposition does not even address exhaustion. Thus, it appears that Plaintiff has failed to exhaust administrative remedies prior to filing the above captioned action. Regardless of exhaustion, the Court finds that Plaintiff's claims fail on their merits.

## B. Merits

### 1. Retaliation

An inmate stating a retaliation claim pursuant to the First Amendment bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. See Rauser v.

Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." See id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." See id. at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 199 n.10 (3d Cir. 1996). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons

reasonably related to a legitimate penological interest." See Rauser, 241 F.3d at 334. If the prison officials can make this showing, it defeats the retaliation claim. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

In his complaint, Plaintiff alleges that Defendants Shaup and McTague retaliated against him by "attempting to place a 6'2" pedophile in cell with Plaintiff and issuing a misconduct for filing Grievance against co-workers, and for not following RTU Policy." (Doc. 1).

It is well-settled that inmates engage in protected activity when they file grievances and lawsuits. See Anderson v. Davila, 125 F.3d 148, 161-62 (3d Cir. 1997). Thus, the Court must consider whether the alleged adverse actions set forth above are actionable under §1983. To be actionable under §1983, the adverse action "need not be great" but "must be more than *de minimis*." See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted). Moreover, "[t]he cumulative impact of retaliatory acts may become actionable even though the actions would be *de minimis* if considered in isolation." See Brennan v. Norton, 350 F.3d 399, 422 n.17 (3d Cir. 2003). A panel of the Third Circuit Court of Appeals has noted, in a non-precedential opinion, that "being issued misconduct charges" constitutes "more than '*de minimis*' adverse action[ ]." See Palmore v. Hornberger, 813 F. App'x 68, 70 (3d Cir. 2020) (citing McKee, 436 F.3d at 170). With respect

to the third prong of a retaliation claim, while causation may be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence." See Watson, 834 F.3d at 422. Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See id.

With respect to the named Defendants, the record is devoid of any evidence that Plaintiff ever filed a grievance against them. See Royster v. Beard, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming the district court's grant of summary judgment in favor of a defendant on the inmate-plaintiff's claim that he was retaliated against by an individual who was not the target of his protected activity). Thus, "[t]here is no apparent reason why Defendants would want to retaliate against Plaintiff for filing [grievances] against others." See Evans v. Rozum, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009); see also Murray v. Smithbower, 1:17-cv-127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021) (quoting Victor v. Lawler, 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), aff'd, 565 F. App'x 126 (3d Cir. 2014)) (noting that courts "have consistently

rejected retaliation claims 'against one defendant based on [protected activity] against another [individual]' for lack of retaliatory motive").

Moreover, there is no record evidence that Defendants were personally involved in the decision to place the alleged "pedophile" in Plaintiff's cell. See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 291 (3d Cir. 2018) (noting that "in the face of [a] motion for summary judgment, a §1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial").

As to Defendant McTague issuing Plaintiff the misconduct, Plaintiff admits that he  engaged in the very misconduct with which McTague charged him. In sum, Plaintiff has alleged nothing more than that he responded to an officer's order by disobeying it and that Officer McTague charged him with misconduct for disobeying the order. Thus, based on the above analysis, Plaintiff's allegations do not raise an inference that McTague's decision to charge Plaintiff with misconduct was retaliatory. The Court, therefore, will grant summary judgment to Defendants with respect to Plaintiff's First Amendment retaliation claim.

## 2. **Personal Involvement**

Under §1983, individual liability may be imposed only if the state actor played an "affirmative part" in the alleged misconduct. Evancho v. Fisher,

423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior*." Id. In other words, defendants "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003); Rode, 845 F.2d at 120-08. Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, does not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take

corrective action following his submission of an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate-plaintiff's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998); see also Rode, 845 F.2d at 1207 (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

Here, Plaintiff alleges that Defendant Shaup, as Unit Manager at SCI-Retreat was given misconduct No. D247749 on September 25, 2019 and asked to review whether it would be appropriate for informal resolution under DC-ADM 801. Shaup concluded that it was not appropriate for informal resolution and referred the misconduct to a (non-party) hearing examiner for a disciplinary hearing. Shaup also was involved in the denial of Grievance No. 824760 at the initial review. However, as set forth above, neither of these allegations are sufficient personal involvement for liability under Section

1983. As such, Defendant Shaup is entitled to summary judgment as a matter of law on Plaintiff's claims.

### 3. Eighth Amendment

Plaintiff vaguely alleges that Defendants Shaup and McTague violated his Eighth Amendment by "failing to protect Plaintiff from harm." (Doc. 1).

"A prison official's 'deliberate indifference' to a substantial risk of harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994). "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." Id. at 833 (citations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834.

The Supreme Court has "held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious[.]' " Id. "For a claim ... based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. That means the inmate must show "a pervasive risk of harm to inmates from other prisoners." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985) (citation omitted). "A pervasive risk of harm may not ordinarily be shown by pointing to a single

incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Id.

"The second requirement follows from the principle that only unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834. Accordingly, "a prison official must have a sufficiently culpable state of mind." Id. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. That state of mind exists where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." Id. at 838.

The crux of Plaintiff's allegations in his complaint seems to be that Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff by ignoring Plaintiff's concerns regarding his cellmate.

Defendants argue that Plaintiff cannot point to any evidence in the record supporting his subjective belief of the substantial risk of harm or actual non-speculative injury resulting from Plaintiff's prior ("Zenecki") and/or

prospective ("Andre") cellmate. (Doc. 30 at 16). The Court agrees that Plaintiff has failed to present sufficient evidence of deliberate indifference to a substantial risk of serious harm. In fact, the record is devoid of any evidence that Plaintiff ever told either Defendant about his concerns of not getting along with his cellmate. Thus, there is no basis in the record for a reasonable jury to conclude that Defendant were aware of, no less disregarded, a substantial risk of harm posed to Plaintiff by his cellmate. See Jones v. Beard, 145 F. App'x 743, 745 (3d Cir. 2005) (affirming summary judgment of no deliberate indifference to a risk that plaintiff's cellmate would attack him where the record showed that plaintiff told guards that he and his cellmate were not getting along and asked to be moved to a new cell but was "devoid of evidence establishing that [plaintiff] articulated specific threats of serious harm, or that he made multiple complaints about [his cellmate] to any one guard"); Blackstone v. Thompson, 568 F. App'x 82, 84 (3d Cir. 2014) (affirming summary judgment of no deliberate indifference where there was "no longstanding, pervasive, well-documented, or previously noted tensions" between plaintiff and his cellmate and nothing in the record showing plaintiff told defendant "of any specific incident or cause of tension between the cellmates from which a greater inference of risk could be drawn").

Accordingly, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment failure to protect claim.

**VII.** **CONCLUSION**

For the reasons set forth above, the Court will grant the Defendants' motion for summary judgment.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 29, 2022**
20-0211-01